United States District Court
Southern District of Texas
**ENTERED**
January 29, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CINCO CLA PARTNERS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-2826 |
| | § | |
| CHILDREN'S LEARNING ADVENTURE USA, LLC, RICHARD SODJA, AND MOLLY SODJA, | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Doc. 10). The court has considered the motion, the response, the reply, the sur-response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED**.

### I. Case Background

Plaintiff filed this lawsuit against Defendants seeking damages for the breach of two guaranty agreements.

**A. Factual Background**

Defendant Children's Learning Adventure USA, LLC ("CLA"), is a retailer that operates across multiple states under the trade name "Children's Learning Adventure."[2] CLA runs dozens of

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 13, Ord. Dated Sept. 4, 2019.

[2] See Doc. 10-1, Ex. 1 to Pl.'s Mot. for Summ. J., Decl. of Sharon Haydon ("Haydon") p. 1.

childcare facilities for pre-school education, before-school childcare, after-school enrichment, and summer camp.[3] None of these facilities is owned by CLA.[4] Rather, for each facility, CLA is the parent company to a fully-owned subsidiary.[5] Each subsidiary, as a tenant, entered into a lease with the landlord for each facility.[6] Plaintiff is the owner and landlord of one of these facilities located at 24224 & 24210 Cinco Terrace Dr., Katy, Texas 77474 (the "Facility").[7]

On March 3, 2015, Plaintiff and CLA Cinco, LLC ("Tenant"), a subsidiary of CLA, entered into a lease of the Facility (the "Lease").[8] As additional consideration for the Lease, CLA entered into a guaranty agreement (the "CLA Guaranty"), and Defendants Richard and Molly Sodja (the "Sodjas") entered into a guaranty agreement (the "Sodja Guaranty").

Through the CLA Guaranty and Sodja Guaranty (collectively the "Guaranties"), CLA and the Sodjas (collectively the "Defendants") "guarantee[d] . . . absolutely and unconditionally, the full payment, performance and observance of all amounts to be paid and provisions of the Lease provided to be performed and observed by

---

[3] See id.

[4] See id.

[5] See id.

[6] See id.

[7] See id.

[8] See id.

2

Tenant."[9] Defendants also waived, "to the fullest extent permitted by law" numerous rights and defenses to the Guaranties.[10]

Sometime in late 2016 or early 2017, Defendants recognized that multiple childcare facilities, including the Facility, were not profitable.[11] To help keep the Facility open, Plaintiff began to accept less than the full amount of rent due on the Lease from Tenant.[12] Defendants allege that the parties orally modified the Lease. Plaintiff alleges that the Lease was never modified and that it was only accepting less rent from Tenant until a restructure was completed.

As of July 26, 2019, Tenant was allegedly in default under the Lease, and owed Plaintiff $2,470,727.47 pursuant to the Lease.[13]

**B. Procedural Background**

Plaintiff filed this lawsuit in Texas state court on June 20, 2019.[14] The lawsuit was removed to this court on July 31, 2019.[15] On August 29, 2019, Plaintiff filed its pending motion for summary

---

[9] Doc. 10-1, Ex. 1-B to Pl.'s Mot. for Summ. J., CLA Guaranty p. 1; see also Doc. 10-1, Ex. 1-C to Pl.'s Mot. for Summ. J., Sodja Guaranty p. 1.

[10] See id. pp. 1-2.

[11] See Doc. 12-1, Ex. A to Defs.' Resp. to Pl.'s Mot. for Summ. J., Decl. of Richard Sodja.

[12] See id.; Doc. 12-1, Exs. B & C to Defs.' Resp. to Pl.'s Mot. for Summ. J., Dep. Tr. of Haydon.

[13] See Doc. 10-1, Exs. 1, 1-D, & 1-E to Pl.'s Mot. for Summ. J., Haydon Decl., Tenant Account Statement, & Not. of Tenant's Default.

[14] See Doc. 1-2, Pl.'s Orig. Pet.

[15] See Doc. 1, Defs.' Not. of Removal.

3

judgment.[16] On September 3, 2019, Defendants filed their response to Plaintiff's motion for summary judgment.[17] On September 6, 2019, Plaintiff filed its reply in support of its motion for summary judgment.[18] On October 4, 2019, Defendants filed a sur-response to Plaintiff's motion for summary judgment.[19]

On October 24, Defendants filed a notice that a related case in the Northern District of Oklahoma had been administratively closed pending the bankruptcy court's determination of the amount owed under the relevant lease.[20] On October 29, Plaintiff filed a response to Defendants' notice.[21] On November 11, 2019, Defendants filed a notice that they had filed a motion to consolidate multiple related cases, including this lawsuit, into one lawsuit.[22] On the same day, Defendants' motion to consolidate was denied in the related case.[23] On November 26, 2019, Plaintiff notified the court that the Lease had been rejected by the bankruptcy court in the underlying bankruptcy proceeding.[24]

---

[16] See Doc. 10, Pl.'s Mot. for Summ. J.

[17] See Doc. 12, Defs.' Resp. to Pl.'s Mot. for Summ. J.

[18] See Doc. 14-2, Pl.'s Reply in Support of Mot. for Summ. J.

[19] See Doc. 24, Defs.' Sur-Response to Pl.'s Mot. for Summ. J.

[20] See Doc. 25, Defs.' Not. of Ord.

[21] See Doc. 26, Pl.'s Resp. to Defs.' Not. of Ord.

[22] See Doc. 27, Defs.' Not. of Mot. to Consolidate.

[23] See Doc. 32 in 4:19-cv-02821, Ord. Dated Nov. 19, 2019.

[24] See Doc. 28, Pl.'s Not. of Lease Rejection.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  See id. at 505 (quoting Celotex Corp., 477 U.S. at 323).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  See id.  The court must accept all of the nonmovant's evidence as true and draw all justifiable

inferences in her favor. Coastal Agric. Supply, Inc., 759 F.3d at 505 (quoting Anderson, 477 U.S. at 255).

### III. Analysis

Plaintiff seeks summary judgment on its claim for breach of the Guaranties by Defendants. Defendants argue that the Lease was modified and that Tenant is not in breach of the lease.

**A. Absolute Guaranties**

"When a guaranty is unqualified and expresses no conditions to trigger the payment or performance, it is an 'absolute guaranty.'" Playboy Enterprises, Inc. v. Sanchez-Campuzano, 519 F. App'x 219, 222 (5th Cir. 2013)(citing Universal Metals & Mach., Inc. v. Bohart, 539 S.W.2d 874, 877 (Tex. 1976)). "An absolute guarantor is primarily liable and waives any requirement that the creditor take action against the principal obligor as a condition precedent to his or her liability on the guaranty." Corona v. Pilgrim's Pride Corp., 245 S.W.3d 75, 81 (Tex. App.—Texarkana 2008, pet. denied)(citing Hopkins v. First Nat'l Bank at Brownsville, 551 S.W.2d 343, 345 (Tex. 1977)).

Here, the Guaranties state that Defendants "absolutely and unconditionally" guarantee the full performance of the Lease.[25] Accordingly, the court finds that the Guaranties are absolute guaranties. Defendants do not contest this finding.[26]

---

[25] Doc. 10-1, Exs. 1-B & 1-C to Pl.'s Mot. for Summ. J., The Guaranties.

[26] See, e.g., Doc. 24, Defs.' Sur-Response to Pl.'s Mot. for Summ. J. p. 1.

**B.     Lease Modification**

Defendants argue that the reduced rent payments constituted an oral lease modification by Tenant and Plaintiff.  Plaintiff argues that whether the Lease was modified is irrelevant, and even if it was relevant, the Lease was not modified.

"Defenses based on changes to the underlying obligation and thus changes to the guaranty agreement are termed suretyship defenses."  Playboy Enterprises, Inc., 519 F. App'x at 223.  Absolute guarantors may assert suretyship defenses unless the defense has been expressly waived.  Id.

Defendants have asserted that the Lease was modified such that the amount owed by Tenant was less than the original amount required by the Lease.  Defendants waived, "to the fullest extent permitted by law . . . [a]ny defense based on . . . any release, discharge, modification, impairment or limitation of the liability of Tenant to [Plaintiff] from any cause, whether consented to by [Plaintiff] or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding . . . and . . . any rejection or disaffirmance of the Lease . . . ."[27]  Thus, to the extent that Defendants argue that the alleged lease modification affected their obligations under the Guaranties, that argument must be rejected because Defendants have expressly waived that

---

[27]   See Doc. 10-1, Exs. 1-C & 1-D to Pl.'s Mot. for Summ. J., The Guaranties.

7

suretyship defense. See Playboy Enterprises, Inc., 519 F. App'x at 223.

However, "[a]bsolute guaranties are conditioned solely on default of the principal debtor." Corona, 245 S.W.3d at 81 (citing Mid-South Telecomms. Co. v. Best, 184 S.W.3d 386, 391 (Tex. App.-Austin 2006, no pet.)). Thus, if the Lease was modified such that Tenant's lowered payments were not in breach of the Lease, Tenant would not have defaulted and the Guaranties would not be triggered. The court need not resolve this issue because, as discussed below, Tenant has otherwise defaulted on the Lease.

## C. Bankruptcy Proceeding

Numerous CLA entities, including Tenant, are currently part of a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Arizona, filed on December 18, 2017.[28] On October 28, 2019, as a part of the bankruptcy proceeding, Tenant filed a motion to reject the Lease.[29] On November 13, 2019, the bankruptcy court held a hearing on multiple matters, including Tenant's motion to reject the Lease.[30] At the hearing, the bankruptcy court granted Tenant's motion to reject the Lease.[31]

Absent circumstances not present here, "the rejection of an

---

[28] See In Re CLA Properties SPE, LLC, 2:17-BK-14851-BMW (Bankr. D. Ariz. Dec. 18, 2017).

[29] See id., Doc. 459, Motion to Reject Real Property Leases.

[30] See id., Doc. 496, Minutes of Nov. 13, 2019 Hearing.

[31] See id. p. 8.

8

executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease[.]" 11 U.S.C. § 365(g). Accordingly, even if the Lease was modified such that Tenant's lowered payments were not in violation of the Lease, Tenant has still breached the lease and is in default. Further, Tenant did not pay any rent in July or August of 2019, which also constituted a breach of the Lease.[32]

Finally, the fact that the Lease has been rejected by the bankruptcy court has no effect on whether the Lease can be enforced against Defendants pursuant to the Guaranties. See, e.g., Playboy Enterprises, Inc., 519 F. App'x at 223 ("[A]n absolute guaranty imposes liability on the guarantor even if the underlying obligation cannot be enforced against the principal."). Regardless, Defendants have expressly waived any defenses they might have related to Tenant's bankruptcy.[33]

D.  **Breach of the Guaranties**

To prevail on its claims for breaches of the Guaranties, Plaintiff must prove: "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by

---

[32] See Doc. 14-3, App. to Reply in Support of Mot. for Summ. J., Decl. of Haydon.

[33] See Doc. 10-1, Exs. 1-C & 1-D to Pl.'s Mot. for Summ. J., The Guaranties.

the guarantor." Haggard v. Bank of Ozarks Inc., 668 F.3d 196, 199 (5th Cir. 2012)(quoting Marshall v. Ford Motor Co., 878 S.W.2d 629, 631 (Tex. App.-Dallas, 1994, no writ))(internal quotation marks omitted).

Plaintiff has established that it is the owner of the Guaranties.[34] Plaintiff has provided the underlying contract, the Lease.[35] Tenant's breach of the Lease constituted the conditions on which Defendants' liability is based. See, e.g., Corona, 245 S.W.3d at 81 (citing Mid-South Telecomms., 184 S.W.3d at 391). Finally, Defendants have not performed their guarantee of "the full payment, performance, and observance of all amounts to be paid and provisions of the Lease provided to be performed and observed by Tenant."[36]

"To determine the extent of the guarantor's liability, we look to the language of the guaranty agreement." Carto Properties, LLC, 2018 WL 827558 at *11 (citing W. BankDowntown v. Carline, 757 S.W.2d 111, 113 (Tex. App.–Houston [1st Dist.] 1988, writ denied)). Defendants guaranteed the full performance the Lease and waived the suretyship defenses that they argue apply. Accordingly, Defendants are liable to Plaintiff for full performance of the Lease, even for

---

[34] See Doc. 10-1, Exs. 1-C & 1-D to Pl.'s Mot. for Summ. J., The Guaranties.

[35] See Doc. 10-1, Ex. 1-A to Pl.'s Mot. for Summ. J., The Lease.

[36] See Doc. 10-1, Exs. 1-C & 1-D to Pl.'s Mot. for Summ. J., The Guaranties; Doc. 10-1, Ex. 1 to Pl.'s Mot. for Summ. J., Decl. of Haydon p. 2.

those months where Plaintiff accepted lowered payments from Tenant.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**.  Should this recommendation be adopted, the court will hold a hearing to determine Plaintiff's current damages.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th day of January, 2020.

Nancy K. Johnson
United States Magistrate Judge